IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI- DADE DIVISION

YAZMIN MALAGON,

    Plaintiff,

v.

DAVID MANCINI & SONS, INC.,

    Defendant,

_____

CASE NO. 1:21-cv-22892

*Plaintiff Demands a Trial by Jury*

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Yazmin Malagon (hereinafter referred to as "**Plaintiff**" and/or "**Malagon**"), by and through her counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant David Mancini & Son, Inc. (hereinafter referred to as "**Defendant**" and/or "**DMS**"), and alleges as follows:

## INTRODUCTION

1. This employment discrimination case is about an employer who knowingly subjected and permitted its female employees to relentless harassment, discrimination, and retaliation.

2. Plaintiff Yazmin Malagon brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("**Title VII**").

3. Ms. Malagon seeks monetary relief to redress the Defendant's unlawful employment practices in violation of Title VII. Additionally, this action seeks to redress the Defendant's deprivation of Ms. Malagon's personal dignity and her civil right to pursue equal employment opportunities.

1

4. Defendant's unrelenting discrimination and harassment against Plaintiff culminated with her unlawful termination.

5. At bottom, the Defendant is liable for subjecting Ms. Malagon to a work environment infested with relentless gender/sex discrimination and for wrongfully terminating Plaintiff because of her gender/sex as well as in complaints of unlawful conduct by Defendant.

## PARTIES

6. At all material times, Plaintiff Yazmin Malagon (hereinafter referred to as "Plaintiff" or "Malagon") is an individual woman residing within Miami-Dade County, in the State of Florida.

7. At all times material, Defendant DAVID MANCINI & SONS INC. (hereinafter referred to as "**DMS**"), was and is a Florida for-profit corporation existing by the virtues and laws of the State of Florida.

8. At all times Material, Defendant DMS operated and conducted business from its' principal place of business located at 3401 N Miami Ave Suite 213-214 Miami, Florida 33127 (hereinafter the "**Midtown Office**").

9. EVELIO GILBERT (hereinafter referred to as "**Gilbert**") was and still is a resident of the State of Florida.

10. Mr. GILBERT was employed by Defendant DMS and held supervisory authority over Plaintiff with regard to her employment including but not limited to, the power to hire/fire, demote/promote, and discipline Plaintiff.

11. At all relevant times, Defendant has been continuously doing business in the State of Florida and the City of Miami and have continuously held at least 15 employees throughout all relevant calendar years.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1).

13. Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami-Dade Division. Defendant's business was located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Miami-Dade, Florida, located in Miami-Dade County, Florida.

## ADMINISTRATIVE PREREQUISITES

14. Plaintiff Malagon has complied with all statutory prerequisites to file this action.

15. On or about July 10, 2020, Plaintiff dual-filed her charge for discrimination with the Equal Employment Opportunity Commission ("**EEOC**") (Charge No. 15D-2020-01101) and the Florida Commission on Human Relations ("**FCHR**") (Charge No. 202126238) against Defendant alleging and allowing for the investigation of the facts as set forth herein.

16. In accordance with and pursuant to the existing workshare agreement between the two agencies, an FCHR filing automatically operates as a dual EEOC filing.

17. On or about May 14, 2021, the EEOC issued Plaintiff a Right to Sue Letter, and was received by Plaintiff's counsel on May 18, 2021.

18. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

19. This action is being commenced more than (180) days since the inception of Plaintiff's administrative action against the Defendant.

## STATEMENT OF MATERIAL FACTS

20. On or about May 17, 2019, Defendant DMS, by and through its management team, hired Ms. Malagon to fill the open role of "Administrative Assistant" in their Midtown Office. During and throughout the course of her employment with Defendant DMS, Defendant DMS instructed Plaintiff to work closely and train directly under the supervision of Defendant DMS's Project Manager, Mr. Evelio Gilbert.

21. As a result, Plaintiff was distinctly aware that Mr. Gilbert had supervisory authority over her work with Defendant. Mr. Gilbert had control with regard to all aspects of her employment, including but not limited to the ability and power to hire, fire, demote and/or otherwise exercise control Ms. Malagon.

22. Throughout the course of this consistent and close working relationship, Mr. Gilbert utilized his disproportionate power dynamic as a supervisor to take advantage of and regularly sexually harass Ms. Malagon.

23. By means of example and in no way meant to be a definitive list, on more than one occasion, Mr. Gilbert intentionally would demonstrate his dominance and humiliate Plaintiff by knowingly leaving the restroom door open while urinating in order to intentionally expose his penis to Ms. Malagon.

24. On each of these occasions, Ms. Malagon would express her disgust and displeasure with Mr. Gilbert's actions, insisting that he shut the door, at a minimum, while in her presence.

25. Regardless of her protests to his disturbing, degrading and otherwise sexualized behavior, Mr. Gilbert would persist, continuing to expose himself to her while seemingly gaining pleasure from her discomfort.

26. Furthermore, Mr. Gilbert would make "*jokes*" regarding his penis, referring to it as "Penne."

27. Additionally, on more than one occasion, Mr. Gilbert would lurk near Plaintiff Malagon while she was working in the office, and while she was unaware of his movement toward her, would walk behind her and forcibly grab her buttocks.

28. Again, uncomfortable by her manager's actions in physically groping her against her will and without her consent, Ms. Malagon would demand Mr. Gilbert stop. Unsurprisingly, Ms. Malagon's complaints and protests to Mr. Gilbert would fall on deaf ears, only heightening his misconduct in retaliation.

29. In fact, Mr. Gilbert's actions were so brazen as to be conduct in the full presence of Ms. Malagon's colleagues. By means of example, Mr. Gilbert openly harassed Ms. Malagon in the presence of Mr. Jonathan Akins. Mr. Akins responded seemingly unsurprised, stating to Ms. Gilbert, "Be careful with him."

30. Unbeknownst to Plaintiff at the outset of her employment, Mr. Gilbert had an open and known history of sexually harassing female employees whom he supervised. Despite this history, Mr. Gilbert continued to harass female employees, including Ms. Malagon.

31. In or around the late fall 2019, Mr. Gilbert and Ms. Malagon joined multiple staff and employees during an office dinner and drinks following a long workday. That evening, Mr. Gilbert became highly intoxicated. At the end of the night, Ms. Malagon drove Mr. Gilbert back to where he had parked his car. While in her car, and following month of grooming, Mr. Gilbert

became aggressive with Ms. Malagon, touching and rubbing her body as she drove. Ms. Malagon, on multiple occasions, forcibly pushed Mr. Gilbert away from her body and demanded he stop. Ms. Malagon began to panic as she feared he was not only going to attack her while alone but that his brazen actions while she was driving could result in her losing control of the vehicle.

32. The two continued their drive-in uncomfortable silence until Ms. Malagon delivered Mr. Gilbert to his car. Once at the car, Ms. Malagon ensured that he left the car and she quickly drove away.

33. In or around January 2020, Mr. Gilbert became possessive of Ms. Malagon. He would demand that Ms. Malagon "only talk to [him] if it involves sex." At all times, Mr. Gilbert's was dismissive of Ms. Malagon when she approached him relating to work, reminding her of his "policy" regarding their communication. As a result, Ms. Malagon began to feel increasingly threatened by Mr. Gilbert, increasingly aware of his authority over her job security.

34. In fact, Mr. Gilbert would expressly threaten Ms. Malagon, reminding Ms. Gilbert of his authority and ability to impact her role with Defendant DMS.

35. Mr. Gilbert would in turn proposition Ms. Malagon, insisting that she give him a "massage." Ms. Malagon would repeatedly refuse only to be threatened and continually proposition by Mr. Gilbert. Despite her insistence that he act respectfully and/or focus on work, Mr. Gilbert remained undeterred.

36. At or around the same time, Plaintiff Malagon sought out Mr. Gilbert about the possibility of securing a work vehicle. As Ms. Malagon explained the basis for her request, Mr. Gilbert cut her off abruptly, insisting Ms. Malagon perform oral sex on Mr. Gilbert and, in exchange, he "would see what [I] can do."

37. Ms. Malagon was shocked by the absurd and disgusting request. Given the vulgar nature of the comment and his increased sexually explicit comments and conduct, Ms. Malagon was horrified and fearful for her safety around Mr. Gilbert.

38. Ms. Malagon attempted to keep her distance and/or would take calculated efforts to ensure others were present when she had to engage with Mr. Gilbert. She feared contacting anyone in Human Resources or higher management as Mr. Gilbert had made it clear her job security was within his control.

39. Despite her efforts to ensure safety in masses, Mr. Gilbert would continue to harass Ms. Malagon while in the presence of others, including Defendant DMS's Civil Engineer/Project Manager, Fabio Angarita, and Project Manager, Leydis Colomina. Yet, despite the open and obvious harassment and Plaintiff's active steps, the harassment persisted.

40. In or around January 2020, Ms. Malagon expressly sought out Mr. Angarita to request that she be permitted to work alongside Mr. Angarita, in an effort to distance herself from Mr. Gilbert.

41. On or around January 16, 2020, Mr. Gilbert again threatened Ms. Malagon, informing her that she was "replaceable" after Ms. Malagon took a personal sick day. Mr. Gilbert became irate, disparaging Ms. Malagon for taking the permitted sick day.

42. On or around the morning January 17, 2020, Ms. Malagon contacted Mr. Angarita Ms. Kimberly Weldon, and Ms. Deidre Gan, requesting a copy of her job description and a clearer understanding her position under the supervision of Mr. Angarita.

43. Later that same day, Defendant DMS, by and through its owners and managers, unlawfully terminated Ms. Malagon.

44. Defendant DMS's decision to terminate Ms. Malagon was based on her refusal to engage in a work environment with relentless discriminatory comments and conduct towards her and in retaliation for her objections to the aforementioned unlawful conduct and comments by Mr. Gilbert.

45. Plaintiff believes she has been discriminated and retaliated against in violation of Title VII.

46. At all relevant times, Plaintiff was and continued to be qualified for the position she held with Defendant.

47. The aforementioned allegations are just some of the examples of the discrimination and retaliation Ms. Malagon suffered at the hands of the Defendant DMS and Mr. Gilbert and are not meant to be construed as an exhaustive list of Plaintiff's experiences of discrimination and harassment while employed with Defendant DMS.

48. Additionally, Ms. Malagon further claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine. Defendant DMS has exhibited a pattern and practice of unlawful discriminatory conduct.

49. As a result of the acts and conduct complained of, Ms. Malagon has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails. Ms. Malagon also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

50. Further, as a result of Defendant DMS's unlawful employment practices, Ms. Malagon felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

51. Ms. Malagon suffers from increased stress and anxiety. Similarly, Ms. Malagon has trouble sleeping as a result of Defendant DMS and Mr. Gilberts's unlawful conduct. Ms. Malagon is nervous that she will be unable to find comparable work again in a safe environment. However, Ms. Malagon is determined to find work and to pursue employment in a workplace that treats individuals with respect and dignity.

52. As Defendant's conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Ms. Malagon seeks punitive damages as against the Defendant. Ms. Malagon has presented factual allegations that would permit any reasonable jury to award damages.

53. At bottom, Defendant is liable for their reckless disregard for Ms. Malagon's personal dignity, safety and her civil right to pursue equal employment opportunity.

54. Ms. Malagon has suffered damages as a result of Defendant's unlawful employment practices.

## COUNT ONE
*Cause of Action for Discrimination Under Title VII for Hostile Work Environment*

55. Plaintiff reincorporates the allegations in the previous paragraphs 20-54.

56. Defendant DMS is prohibited under the Title VII from discriminating against Plaintiff because of her sex/gender, with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

57. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*:

> "(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

58. Defendant DMS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to a hostile work environment based solely on her sex/gender.

59. Hostile work environment sexual harassment arises when an employer's conduct has the purpose or effect of unreasonably interfering with an individual's work performance or otherwise created an intimidating, hostile, or offensive environment. Such conduct includes sexual advances, requests for sexual favors, and other conduct of a sexual nature.

60. Plaintiff Malagon was subject to unwelcome, offensive, and harassing discriminatory conduct by Defendant Gilbert during her employment with DMS and this conduct was directed to and perpetuated upon Plaintiff because of her sex/gender.

61. As described throughout this complaint, Gilbert repeatedly engaged in verbal and physical conduct of a sexual nature, which altered the terms and conditions of Plaintiff's job performance.

62. As a result, Defendant DMS subjected and permitted its employees to expose Plaintiff to discrimination and unlawful discharge.

63. Defendant DMS, by and through its' management team was openly and knowingly aware of Mr. Glibert's propensity to harassment female subordinates and in fact aware of his harassment of Ms. Malagon.

64. Defendant DMS was notified about and was otherwise aware of the discriminatory conduct and comments directed at Plaintiff Malagon by Defendant DMS's employee Mr. Gilbert and failed to take appropriate corrective action. As a result, the harassment continued to escalate.

65. Defendant DMS violated the Title VII by unlawfully discharging and discriminating against Plaintiff based of her sex/gender, of which the Defendant DMS was fully aware.

66. As a direct and proximate result of Defendant DMS's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

67. Defendant DMS's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

68. Conduct of Defendant DMS and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

69. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT TWO
*Cause of Action for Discrimination Under Title VII for Quid Pro Quo Sexual Harassment*

70. Plaintiff reincorporates the allegations in the previous paragraphs 20-54.

71. Title VII prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individuals' sex.

72. Furthermore, *Quid Pro quo* sexual harassment occurs when an individual submits to sexual overtures in exchange for employment benefits.

73. Mr. Gilbert subjected Plaintiff to unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.

74. Mr. Gilbert refused to provide Plaintiff employment benefits after threatening and demanding Plaintiff to perform oral sex on him and Plaintiff refused his demands.

75. Defendant DMS thereafter further violated the Title VII by unlawfully discharging and discriminating against Plaintiff based of her sex/gender, of which the Defendant DMS was fully aware.

76. As a direct and proximate result of Defendant DMS's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

77. Defendant DMS's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

78. Conduct of Defendant DMS and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

79. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT THREE
*Cause of Action for Retaliation Under Title VII*

80. Plaintiff reincorporates the allegations in the previous paragraphs 20-54.

81. Title VII prohibits retaliation against an employee for opposing conduct which would violate the terms of Title VII.

82. Plaintiff opposed discriminatory conduct by Defendant Gilbert which is prohibited by Title VII when she complained to Mr. Gilbert and numerous other managers employed by Defendant DMS about the discrimination and hostile work environment that he was subjected to as described and set forth above.

83. Plaintiff's complaints about Mr.Gilbert's unlawful and discriminatory actions, therefore, constituted protected activity under Title VII.

84. At all times relevant, Plaintiff Malagon acted in good faith and with the objective and subjective belief that Defendant DMS's employee, Mr. Gilbert, violated of the law and her protected rights.

85. After expressing her opposition to the unlawful discriminatory conduct, Defendant retaliated against Plaintiff by among other things, wrongfully and unlawfully terminating Plaintiff's employment.

86. The adverse employment actions by Defendant DMS were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of Title VII.

87. Defendant DMS's employees unlawfully retaliated against Plaintiff Malagon because she opposed a practice made unlawful by Title VII. Defendant DMS would not have terminated Plaintiff Malagon but for her opposition.

88. As a result of Defendant DMS's retaliatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff

accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

89. Defendant DMS's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Title VII. Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

90. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## DEMAND FOR JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendants for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of both Title VII.

Dated:  Miami, Florida  
          August 9, 2021

DEREK SMITH LAW GROUP, PLLC

Caroline H. Miller, Esq.  
701 Brickell Ave, Suite 1310  
Miami, FL 33131  
Tel: (305) 946-1884  
Fax: (305) 503-6741  
Caroline@dereksmithlaw.com

*Counsel for Plaintiff*